The next case is U.S. Bank v. Triaxx. Good morning, Your Honors. This is Eric Whitney. I represent Triaxx Asset Management. One housekeeping matter before we start. Mr. Hannon, Mr. Serengeti, the other appellant, and I are splitting the appellant's argument. We had actually prepared for Mr. Hannon to proceed first because he's going to cover the EJAC jurisdiction argument, which was, in fact, what the district court ruled on, and I was going to cover alternative grounds offered by appellees for jurisdiction which the lower court did not address. We believe it's a more logical order for Mr. Hannon to go first. That said, we will proceed however the court prefers. No, I think you make a good case. Why don't we proceed with Mr. Hannon going first with the EJAC, and then you follow up. Thank you. Very well. Thank you. Excellent. Thank you, judges, for indulging our sequencing. May it please the court, Mike Hannon on behalf of the appellant, Serengeti. I want to emphasize two independent reasons that EJAC jurisdiction is lacking here. First, the EJAC bank admits it has no interest in the outcome of the disputed issue. EJAC jurisdiction requires the bank to be party to the lawsuit, a requirement that has been interpreted to require the bank have an interest in the litigation and face a risk of liability. This requirement is not satisfied, where U.S. bank commenced this action as a Rule 22 interpleader. That is a claim by definition brought to adjudicate disputes between other parties in which the interpleader plaintiff has no interest. So, I agree, of course, that the bank has no interest in the outcome of the proceeding, but it still has to participate in any sale. It still has to comply with the terms of the contract. So, why isn't it, in that sense, an interested party in the proceeding? It's going to have to comply with whatever the court orders. Well, it's not an interested party because the interest requires a personal stake. It requires that the EJAC bank have its own rights at stake in the case, not be adjudicating the rights of others. It's precisely why the district judge didn't rely on the interpleader case to establish EJAC jurisdiction and why the district court instead relied on the cross-claim brought against U.S. bank for declaratory judgment that was later amended to become the operative complaint for jurisdictional purposes and that omitted U.S. bank as a defendant because the bank was irrelevant to the dispute. Mr. Hennum, one of the issues that I have is that I appreciate you telling me that in this court they have no interest, but somehow they were important enough to be a party to the Cayman Islands litigation. In that Cayman Islands litigation, I understood that Triax sought a declaration as to the rights of the collateral manager and U.S. bank and presumably wanted U.S. bank to be bound by that. Now that this proceeding, the proceeding here seems to be pretty analogous, so I don't understand why they were so important and why, presumably, they were an interested party in the Cayman Islands litigation and they're not an interested party here, even though I would expect that the parties would imagine that U.S. bank would be bound by any judgment in this case. Your Honor, that's a fair question. It's not a question of whether the trustee would be bound to take ministerial actions as a result of the judgment. It's a matter of liability. The EJAC bank faced no liability in that case in the Cayman Islands and it faces no liability in this federal case. And the case filed in the Cayman Actions cannot vest this court with Article III jurisdiction. The fact is both in the Cayman's case, which U.S. bank effectively argued should not be there for non-convenience purposes, caused U.S. bank to come to federal court here and allege in paragraph 2 of its complaint that the Cayman Islands jurisdiction has absolutely nothing to do with the disputes. And so when it comes to what matters for the purposes of EJAC jurisdiction, it says the trustee has its own rights at stake. Is it the trustee's money? Are the trustee's rights and obligations in any way implicated? And if the court looks, I think almost all the questions about why there's no EJAC jurisdiction here are evident from the first paragraph of the interpleader complaint framed and well-pled by the trustee. It talks about the purpose of this dispute to adjudicate rights of the interpleader defendants, that is not the trustee but of the other parties. It talks about the securities at issue not being held by the trustee, but instead being held, I'm sorry, the securities at issue that are held by the trustee, not any issuer in the Cayman Islands. And it talks about the fact that TriEx, the collateral manager, is the one responsible for supervising and directing the sale of securities and that most importantly perhaps the trustee has no responsibility for any of this. All of that is clear from the first paragraph of U.S. Bank's complaint. This dispute is a dispute that has nothing to do with foreign banking. The case is not, as U.S. Bank argues, about the sale of disputed securities. It's not about, as PIMCO argues, the release of the lien of the securities. The sale and the lien are both consequences of a decision in favor of PIMCO. Had the appellants won below, there would be no sale. There would be no release of the lien. In fact, there's been no sale because this court stayed the sale pending this appeal. The salient point is that no court has ever premised EDGE Act jurisdiction on a transaction whose foreign nexus, whose only foreign nexus, is contingent on the outcome of a case. And no court has ever premised EDGE Act jurisdiction whereas here the EDGE Act bank is neither a defendant in the action nor a party with its own rights at stake in the action. We scoured the case law. The case law is at best inconsistent. But those two principles apply across all the cases. The EDGE Act bank has to be a defendant facing liability and the dispute needs to arise out of banking by the EDGE Act bank. That's what this court held in AIG and that characteristic is lacking here. If I may, I see I'm past my time, judges. Would you like to use some of your rebuttal time now or would you prefer to save it for rebuttal? If I could use, yes, my rebuttal time now, I think I'd like to do that. Thank you. Just very quickly, not only is this a dispute about the Tri-Ex's rights and responsibilities under contracts governed by New York law. Even if you assume this case is about the sale of securities, a sale of securities is not a foreign transaction by U.S. Bank as it must be under AIG. There are references in Applebee's papers to the foreign ownership of securities and to sales by Cayman Island issuers. Those are unsubstantiated and they're false. The issuers here haven't owned these securities or played any role in these transactions since 2000. Whether the assertions are false or not, that doesn't affect subject matter jurisdiction. You have subject matter jurisdiction, it's over a claim. The claim may succeed or not. But that doesn't impact whether there is subject matter jurisdiction when the claim is brought. Your Honor, the way it impacts subject matter jurisdiction is subject matter jurisdiction here is based on the EDGE Act which requires a nexus between the dispute and a foreign transaction by U.S. Bank. What I'm saying is that the transactions at issue here did not involve foreign banking by U.S. Bank because the only connections to the Cayman Islands were eliminated 13 and 14 years ago when these Cayman Island issuers, pursuant to the granting clause of the indentures, all of their right title and interest in the securities to the trustee. As PIMCO's counsel explained in another Triax-related matter, the issuer has no connection to this case. It's a shell entity that is meant to be in the Cayman Islands, as Mr. Salvas said, issue notes, and then they're done. And so the reason the record matters is because the record reflects that the sale of securities, the release of the lien of the indenture, wholly domestic transactions. The trustee in Ohio, its securities in New York, it's the collateral manager directing the sale from Delaware to a broker in Connecticut. And it's U.S. Bank operating not offshore, but out of its trustee office in Illinois, instructing the settlement of trades in New York. And so to the extent that the record is not crystal clear as to how that sale works, it's a purely domestic transaction. But there needed to be a careful examination of the nature of the transaction. After this court held in the AIG case in 2013, and after this court held 40 years ago in the Corporation Venezolana case, you need to have a careful examination of the nature of the transaction to establish EJAC jurisdiction. And you need a connection between, what you need is an action by the EJAC bank relating to a foreign transaction, and that does not exist here. Thank you, Mr. Hammond. We'll hear from your co-counsel. Thank you. May it please the court. I'll start by further responding to Judge Pope-Failla's question. Because it's important, the Cayman action, the Tri-X fraud. And it just emphasizes the fact that why this was not a proper Rule 22 interpleader action by U.S. Bank, because it was not facing competing demands that it was capable of taking any action on. It was Tri-X that was facing the competing demands. Because it is Tri-X and Tri-X alone, as the collateral manager, that is empowered under the operative indentures to execute sales of securities that the note holders were making competing demands on Tri-X, not the trustee. Was there subject matter jurisdiction over the original interpleader action? In this court? In this case, yeah. No. It was not a proper Rule 22 interpleader. That may go to the merits, but does it go to subject matter jurisdiction? No, because there was not diversity of citizenship when the parties are properly aligned. It's important to remember this was a Rule interpleader, which does not confer jurisdiction automatically. There must be an independent ground. There was no jurisdiction under the EDGE Act for the original interpleader action? No, there was not, as Mr. Hannan explained. But whether this court views this action as a proper Rule 22 interpleader or not, and for reasons I will discuss, it decidedly is not, in conducting its analysis of diversity jurisdiction, the court must discharge its duty to not rely on the parties' own alignment of themselves, but rather look beyond the pleadings and arrange the parties according to the size of the dispute. As the Supreme Court held in the city of Indianapolis, diversity among litigants is not to be determined merely by the form of the pleadings, but must be established according to the actual legal interests of the parties. Whether the necessary collision of interests exists is not to be determined by mechanical rules. It must be ascertained from the principal purposes of the suit. And this court has followed that guidance. And when the court does that and realigns the parties, it will find, as the district court did below, that in reality the real collision of interests in this case is PIMCO versus Serengeti and Triax. And so realigned, there is no diversity of citizenship. Mr. Whitney, just to be clear, part of the reason you're engaging in this realignment exercise and telling us to do so is your belief that U.S. Bank doesn't face competing demands at all, correct? Absolutely. Alright. Are you saying that U.S. Bank will face no consequences in this litigation, irrespective of how it turns out? That there's no circumstance under which U.S. Bank faces any consequences? Yes, exactly. And thank you for that question. U.S. Bank is completely exculpated under the indenture from any liability for actions taken at the direction or at the absence of the direction, not taking action, of the collateral manager. Sir, is there not a good faith proviso there, that the actions had to be taken or admitted in good faith in accordance with the direction of the collateral manager? It does have that proviso, but there's been absolutely no allegation in this case or otherwise with respect to the subject matter hereof, that U.S. Bank has acted other than in good faith. And sir, just to be clear, why I'm asking that question is, we have that, we know that now, or we believe that now, because of the benefit of the trial record and the summary judgment record, but at the time the interpleader was filed, can we say that U.S. Bank had no worries at all? My concern is the inclusion of the good faith proviso left open the possibility that they could be subject to liability to someone, and that that made it a valid Rule 22 interpleader. I'll hear from you why that's incorrect. I don't think that it depends on the subjective belief. This court has held a number of cases, including in cases where a claimant was threatening to sue, where the court looked, and I'm referring to the Glenn Clover case, Washington Electro Cooperative, Correspondent Services, and then also a case of Judge Nathan, herself, CF-135 Fiat. And in all of those cases, the court looked at operative documents or operative law and found that the stakeholder who had brought the interpleader either contractually or legally could not be liable and found as a matter of law on that basis, without trying to get into the head of the plaintiff, that interpleader was unavailable. But doesn't the good faith language, and as I'm looking at the relevant documents, possibly liability for negligence, but focusing on the good faith language, doesn't that create the possibility of U.S. Bank being liable? So at the stage in which the interpleader is brought, you have to look at its subjective feelings, look at the documents. Right, so Judge Livingston, I think the important point there is what the demands were against the collateral manager and what the trustee was asking for a declaratory judgment on. It was not asking the court to sell the securities. There is no dispute regarding ownership of the securities or entitlement to proceeds upon a sale. There is no res, which is another point that is important. But going back to your question, the point is that for the issue that U.S. Bank was interpleading, which was effectively a declaratory judgment as to the proper classification of securities, which would then tell the parties whether they needed to be sold or not sold, that's not something that U.S. Bank decides. The collateral manager is solely responsible for classifying securities under the indenture that would then dictate whether or not they need to be sold. U.S. Bank has no role whatsoever in that decision. It held the lien, right, and it would have to release the lien. And one of the claims was that indeed it abides by its obligations under the trustee agreement. It does hold the lien, although as Mr. Hannan explained, that is a ministerial function, and there would be no argument whatsoever that there was an absence of good faith under the operative clause. If the collateral manager told the trustee, release the lien, it releases the lien, it's done. If the collateral manager does not construct... And that was known for sure. That was a certainty when the interpleader was brought. Well, it certainly had happened consistently for more than a decade. Any time that the trustee had been given that instruction, in any of these three trusts, it had always followed those instructions. We'll hear from your adversary. Thank you. Good morning, Your Honors. So I think stepping back is helpful because the sort of myopic focus on sort of little discrete issues misses the forest for the trees. And some of the questions alluded to, at the time the interpleader was filed, there was clearly diversity jurisdiction as well as federal question jurisdiction under the EDGE Act. TRIACS 1, a substantially similar case, there's sort of a series of TRIACS deals. This case involves the latter two. TRIACS 1 involved the first of those deals. A ruling had been issued on the very issue in dispute here, whether the three-year defaulted securities needed to be sold. The collateral manager, prior to the commencement of this action, sued, rather the issuer, sued U.S. Bank, my client, in the Cayman Islands. So we had an active litigation pending against us in the Cayman Islands where the issuers, who they claim have no interest in this or shell companies, were seeking a declaration binding us not to follow the court's ruling in TRIACS 1. At the same time, note holders, the controlling class in each of the deals, were reaching out to us and indicating that we would be in breach of our obligations if we did not follow TRIACS 1, right? And so we brought an interpleader action. I can't think of a more classic interpleader action under Rule 22 where we literally face the risk of inconsistent judgments. If we had not acted, and in fact to this very day, the Cayman action remains pending. So the issuers have not dropped or withdrawn the Cayman action. It was stayed. We've confirmed with Cayman Council that it remains pending. But we face the real possibility that in the Cayman Islands, we would be subject to a judgment that said we do not file charge. So how did the issue come up? How did the issue come up later, years later, as to subject matter jurisdiction? Well, Sue, the subject matter jurisdiction question, the parties consented throughout the course of the case. At trial, there were questions raised about subject matter jurisdiction. I think that goes to one of your questions, Your Honor, which is what is the distinction between subject matter jurisdiction and failure to state a claim? And the case law, and we've cited it in our brief, it's clear that we've established, if you've established an actual controversy, which we have by our allegations and our complaints, you have subject matter jurisdiction. The arguments that are being raised now are failure to state a claim arguments. But that upends the structure of the federal rules because it effectively allows, you know, a 12B6 motion can only be brought at the pleading stage, but it allows it any time in the action. And we've seen here where there was a, I mean, if you look at the merits decision, a unfavorable ruling for one side, right? They have brought this subject matter jurisdiction challenge, but it is really a cloaked merits challenge, and allowing that to proceed undermines sort of the structure of the federal rules. The other point that I think is relevant here is that the case law is clear that EDGE Act jurisdiction, the question about whether you're a real party in interest as well as there's foreign or international banking, has been consistently decided in our favor. As you look through the case law study in our briefing, in fact, Judge Daniels, just at the end of August, issued an opinion in the Eddystone Rail case, 220 U.S. District, Lexis 155796, where he found that a bank that is a party to a contract with a counterparty that is a foreign entity satisfies EDGE Act jurisdiction for the purposes of international or foreign banking. Here, exactly the same situation, the indenture, the contract by which the rights that are being fought over, the governing contract, that is a contract that involves U.S. Bank as well as the issuers. The U.S. Bank is sued in the Cayman Islands, yet another indication of foreign or international banking. And we're, through the sale, and I know there are a lot of sort of statements going around, but through the sale, the securities, which is the literal judgment that is being appealed to. So the judgment directs us to sell the securities. We are required to release the lien. The securities, notwithstanding everything that's been said, and certainly there is a granting clause that gives us the rights, but they are still held in the name of the foreign issuer. To rule that there isn't international or foreign banking operations here sort of belies the sort of long series of case law. And ultimately, and I think it's important to think about what they're asking here, if this case is dismissed, we are back in the Cayman Islands. That action resumes. We are subject, and we've discussed this with Cayman Council, we are subject to actual liability because in the Cayman Islands, if we do not prevail, we are responsible for fees. So the idea that there would be no consequence, no risk to us if the interpreter was dismissed is simply incorrect. Thank you, Mr. Lorenzo. We'll hear from Pimko. May it please the courts, Sandeep Sablud for Pimko. I'd like to touch on the various points that opposing counsel has raised, starting with the issue of whether U.S. Bank is a party and whether it faces liability. Judge Filer raised the Cayman Islands action, and I think it's telling that in the record, and this is in the record at A728, paragraph 18 of the pleadings states, Triax alleges, the trustee as defendant will be bound on behalf of all the note holders by any determination of the issues raised by this claim. It's the exact same relief that Triax sought in its amended pleading, in this case, in its amended cross-claim, when it sought a binding declaration, binding declaratory judgment against the trustee. And that makes sense because section 6.17 of the indenture makes the trustee a fiduciary for the senior note holders. Section 6.17 states that the trustee acts as a representative of the senior note holders and that it acts as an agent for the other note holders. Section 15.1 says that the issuer's rights under the collateral management agreement may also be exercised and enforced by the trustee. And section 5.1 says that if the issuers fail to comply with any covenant, so that includes the mandatory sale provision, under section 5.4b, the trustee may take action and in certain circumstances, if it receives a demand from note holders, must take action by way of a proceeding. So, as of November 2016, at the time this case was instituted, the trustee is in a situation where it has all these various provisions saying that it's acting as a fiduciary for the senior note holders and it also has a decision from Judge Pauly in triax 1, the predecessor CDO, with the exact same language in the indenture. And there the collateral manager triax is making the exact same arguments it's making here, that this is a case about whether the collateral manager can classify securities, not about the mandatory sale provision. And Judge Pauly says that the indenture actually supports the mandatory sale provision and the indenture has language saying that the collateral manager must supervise and direct the sale of the securities. And Judge Pauly says that the general language in the collateral management agreement must cede to the specific mandate in the mandatory sale provision. This court affirmed that decision and said that the indenture provisions and the collateral management provisions, read plainly, do not override the indenture's express directive that the securities, three-year defaulted securities, be sold. And this language that triax is again pointing to, the direction of the collateral manager that the trustee faces no suit or possibility of suit because of this language that it acts upon the direction of the collateral manager. Judge Pauly said that that is of no moment because the collateral manager is required to direct. There's no discretion. So the trustee is now, as of November 2016, facing a situation where it's received demands from note holders, two note holders, Cerberus and Pemko. They're reserving rights against the trustee, which any sophisticated person knows means that they're reserving their right to sue the trustee if it doesn't take action. And there's a decision from Judge Pauly, which subsequently is affirmed by this court. So that is the background of the liability that the trustee faces. And, of course, the no action clause is, there's a body of case law saying that the no action clause is inoperative because a trustee cannot be expected to sue itself. And that body of case law has arisen for the precise reason that note holders don't want to be disenfranchised and have the ability to sue a trustee who has a fiduciary duty to it. I want to also raise an issue concerning the foreign nexus and the operations of US Bank. Aside from the sale provision, which, of course, the parties have focused on, and I'm cognizant of the time, so I'll make this quick. There are at least five cases that say that when the issuer, sorry, when a bank enters into an agreement with a foreign counterparty, that in and of itself is sufficient to meet the foreign transaction requirement. This court in Ventura Sales found a transaction with respect to a letter of credit between a New York bank and a foreign counterparty. Kirchner also syndicated a loan agreement between J.P. Morgan, which had Bank of Montreal as a counterparty. Travis, a case from 1938 dealing with a trust in Ventura with a foreign counterparty. Richey Capital and BMO, Highland Cruise Data, and then the Eddystone case that Mr. Lorenzo referred to. This takes place against the back of the granting clause. The granting clause does not actually transfer a title to the trustee. What's missing from the recitation are these key words. The issuer grants to the trustee for the security of the secured parties all of its right, title, and interest in the collateral debt securities. The collateral debt securities are referred to as pledged securities. That is why under Section 10.8 the trustee is required to lift its name. Of course, I'm very flattered that my words in another oral argument, in another case where different facts have such persuasive effect, but I might add that I was actually referring to Section 7.12, which explicitly says that the issuer has no role other than issuing, and the key here is selling, the securities. With that, Your Honor, unless you have any questions, I'll rest there. Thank you. Mr. Hannan, I think we've waived your rebuttal time, so I think we're done. I didn't mean to waive it. I was hoping I could use your rebuttal time. Do you want to take one more minute? I will use one more minute. Thank you very much, Your Honor. Very quickly, every single case that Mr. Salva just identified was a case in which the EDGE Act Bank was a defendant in that case who faced liability in that case. The issue of subject matter jurisdiction here was identified for the court before trial. We all realized it was an issue. It wasn't at trial. It was before trial because it came up in connection with the burden of proof. It could have been certified for interlocutory appeal like it was in the AIG case. Judge Nathan chose not to do that. There are two essential components to EDGE Act jurisdiction. The dispute needs to arise out of foreign banking, and separately, it needs to be foreign banking by the EDGE Act Bank. Neither the sale nor the release of the lien is a foreign transaction of the EDGE Act Bank. Mr. Lorenzo, who I'm very fond of, said that these securities were held in the name of the foreign issuer. That is factually inaccurate. There were many inaccuracies about the domestic nature of this sale and the lien. What needed to happen was the careful examination that this court requires of the transaction, and this case should be remanded for that careful examination. Thank you, Your Honors. Can I also say, extremely well argued, this format seems to have the judges listening a little bit more than they sometimes do. Maybe it will prove to be a benefit for the legal system in the long haul. Very nicely done. Very well explained on both sides. Helpful. Thank you, Your Honor. We'll take the matter under advisement.